## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE, a minor, through her parents and legal guardians, JANE ROE and JOHN ROE,<br><br>                    Plaintiff,<br><br>v.<br><br>K.G., a minor, by and through his parent(s) and legal guardian(s), R.G. and K.G.<br><br>                    Defendant. | Case No. 2:24-cv-00634-ES-JBC |

### PLAINTIFF'S REPLY
### TO DEFENDANT'S OPPOSITION TO MOTION FOR
### TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION,
### PROCEED UNDER PSEUDONYM, AND FOR EXPEDITED DISCOVERY

Plaintiff, Jane Doe, by and through her parents and legal guardians, Jane Roe and John Roe, submits this Reply to Defendant's Opposition [Doc. 20] to Plaintiff's Motion [Doc. 4] seeking a temporary restraining order and preliminary injunction, an order permitting plaintiff to proceed under a pseudonym, and for expedited discovery, and states as follows:

### INTRODUCTION

The alarming conclusion one reaches from reading the Opposition is that Defendant believes he did nothing wrong and is free to continue creating and doing whatever he wants with unlawful nude images of Jane Doe and other minor classmates. Defendant does not—through argument or evidence—deny any facts asserted in the Verified Complaint. Yet, his Opposition expresses no remorse or

accountability, delivers no promises that Defendant will refrain from creating, viewing, disclosing, and disseminating nude images of Jane Doe, and offers no assurances that Defendant has already preserved his smart phone, social media accounts, and other critical evidence relevant to this case.

Instead, the Opposition incorrectly asserts that "there are no federal or state regulations or laws that regulate or prohibit" Defendant's misconduct because the nude images he created and distributed are supposedly "synthetic" and "fake" and cause no harm. Defendant's Opposition also incorrectly suggests that Jane Doe is not entitled to a TRO because her parents believed law enforcement would do something about Defendant's conduct and promptly filed suit to protect Jane Doe after being informed Defendant could not be charged at this time. *See* Doc. 20- at p. 1; Doc. 7 at ¶ 36.

Defendant's central argument hinges on the false proposition that "none of the purported nude body parts, including breasts, genitals and/or pubic areas, are those of a real person, let alone a minor." *See* Doc. 20- at p.1. However, Defendant created, obtained, disclosed, and disseminated nude photos depicting Jane Doe's **actual face** and her **actual body**. Regardless of how the exposed intimate body parts in these photos were generated, the nude images Defendant created are illegal and actionable "morphed" pornography. *See U.S. v. Hotaling*, 634 F.3d 725, 728-730 (2d Cir. 2011); *U.S. v. Anderson*, 759 F.3d 891, 894-895 (8th Cir. 2014); *U.S. v. Acheson*, 195 F.3d 645,650-652 (11th Cir. 1999).

Defendant tries to side-step this problem by repeatedly mislabeling the images at issue in this case as "synthetic" and "fake," but these images and the harms they caused and continue to cause are very real. Defendant did not create nude images of a fictional or "anime" character. Defendant created nude images **of Jane Doe** using an **actual photo of Jane Doe** because he wanted to see and show his classmates **Jane Doe** naked. The results of his efforts are virtually identical to Jane Doe's original Instagram photo, and the intimate body parts appearing therein were generated using Jane Doe's physical features from the photo Defendant pilfered from her Instagram account. See Doc. 7 at ¶¶ 18, 24-26; see also Doc. 7 at ¶¶21, 24 (*ClothesOff* sample images).

Jane Doe established everything required to award all of the temporary relief she is seeking. Defendant does not offer any legitimate reason to deny this relief.

## I.    PLAINTIFF DEMONSTRATED A CLEAR LEGAL RIGHT TO THE TEMPORARY RELIEF SHE REQUESTED BASED ON FACTS DEFENDANT DOES NOT DISPUTE

### A.    Plaintiff Established a Likelihood of Success on the Merits.

Defendant's contention that "plaintiff cannot succeed on the merits because there are no federal or state laws that regulate or prohibit these synthetic and/or 'deep fake' CGI images" [Doc. 20- at p. 2] is wrong. The plain language of each of the statutes upon which Jane Doe's claims are based prohibits Defendant's creation, possession, disclosure, and/or dissemination of the pornographic images at issue, and case law addressing these statutes confirms this to be the case.

Defendant's chief argument speculates that "[w]ebsites like Clothoff.io use artificial intelligence ("AI") to create synthetic bodies based on a person's preference from a large database of images that are broken down into data and regenerated" and are essentially "like a modern artist who learned to paint only by looking at images of the Mona Lisa (the training data)." *See* Doc 20 at pp. 2-3. In support, Defendant cites a few isolated quotes from *Out of Our Depth with Deep Fakes: How the Law Fails Victims of Deep Fake Nonconsensual Pornography*, 28 Rich. J.L. & Tech. 204 (2021) (the "Kobriger Article"), but this article actually refutes Defendant's own arguments.

The Kobriger Article advocates for the amendment of the Communications Decency Act—which is not an issue in this case—to combat "identity swap" (a/k/a "deepfake") pornography—which also is not at issue in this case. *Id.* at 207, 214. "Identity swap" pornography involves situations where computer "models ***replace one person's face in a photo or video with the likeness of another***." *Id.* at 214 (emphasis added). This case involves the use of an actual photo of Jane Doe in which her actual face and body appear.

Notably, the Opposition overlooks the Kobriger Article's conclusion that "Protections Against Computer-Generated Child Pornography Imply the Same Protections Against Deep Fake Nonconsensual Pornography." *Id.* at 222-223. In this section of the article, the authors recognize that existing law already provides that computer generated pornography that uses real children's faces violates 18 U.S.C. 2251 (the Child Pornography Prevention Act) and applies with equal force to nonconsensual pornography of adults. *Id.* In support, the authors specifically discuss

4

the holding in *Hotaling* (cited by Plaintiff [Doc. 4-1 at p. 16]), explain how the harms of child and nonconsensual pornography are substantially similar, and distinguish *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) (cited in Defendant's Opposition at p. 3) because it involved a facial challenge to the constitutionality of certain provisions of the CCPA criminalizing images that "appeared to be" child pornography even though no minors were actually involved in their creation. Here however, just like in *Hotaling* and several other cases cited by Plaintiff [Doc. 4-1 at p. 16] and additional cases discussed below, the images at issue were created using a real child's face and that child's real body.

The Opposition tries to avoid controlling law by portraying the images at issue in this case as "synthetic" and citing to a page from the *ClothesOff* website [https://clothoff.readme.io/reference/image_generation], which Defendant describes as "requesting information on a user's preference for synthetic images to be produced including age ranges of 18, 20, 30, 40, and 50, and breast size including small, normal, and big, and body types including skinny, normal and curvy." *See* Doc. 20 at p. 2. This self-serving characterization of the *ClothesOff* "image generation" page is a red herring. Plaintiff's **uncontested** allegations establish that the image(s) Defendant created of Jane Doe "are virtually indistinguishable from real, unaltered photos because the ClothesOff AI tool generated them based upon the girls' physical features in the photos or images defendant uploaded." *See* Doc. 7 at ¶ 26. Moreover, and Defendant offers no proof (or even an allegation) that he actually used any of the

aforementioned "preference" features to distort the image of Jane Doe when he "undressed" her using *ClothesOff*.

### i.    Defendant Violated 15 U.S.C. § 6851.

Defendant's argument that the nude images he created do not violate 15 U.S.C. § 6851 [Doc 20 at p. 3] is flawed because it is based on a narrow reading of the statute that contradicts its plain language and focuses solely on the definition of an "intimate visual depiction" ("the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual,") while ignoring the statute's definition of "an identifiable individual" and case law establishing the illegality of "morphed" pornography.

Plaintiff is a "depicted individual" under 15 U.S.C. § 6851 because her "body appears **in whole or in part** in an intimate visual depiction" and she is "**identifiable by virtue of [her] face**, likeness, or other distinguishing characteristic..." *Id.* § 6851(a)(3) (emphasis added). An "intimate visual depiction" is any photo, video, or other visual image, that depicts "the uncovered genitals, pubic area, or post-pubescent female nipple of an identifiable individual." *Id.* § 6851(a)(5). The nude images Defendant disseminated depict Jane Doe's actual face and actual body with "uncovered" genitals, pubic area, and nipples, and caused an actual child harm. *See* Doc. 7 at ¶ 18.

The nude images of Jane Doe are not "fake," and it does not matter whether they are "computer generated" *U.S. v. Payne*, 394 Fed. App'x 891, 896 (3d Cir. 2010)

("the mere fact that an image is computer-generated or produced by electronic means does not make it the 'virtual pornography' at issue in *Free Speech Coalition*.").  In fact, Section 2252A specifically applies to anyone who "knowingly produced with intent to distribute, or distributes, by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor."  *See* 18 U.S.C. § 2252A(a)(7).

In the child pornography context, numerous courts have concluded that "morphed" pornography is illegal.  *See Hotaling*, 634 F.3d at 728-730; *Anderson*, 759 F.3d at 894-895; *Acheson*, 195 F.3d at 650-652; *Doe v. Boland*, 698 F.3d 877, 881-884 (6th Cir. 2012); *U.S. v. Mecham*, 950 F.3d 257, 264-265 (5th Cir. 2020); *Payne*, 394 Fed. App'x at 896.  These types of morphed images cause harm and implicate the interests of real children.  *See Boland*, 698 F.3d at 884.

The Kobriger Article Defendant cites convincingly explains why "morphed" child pornography case law is equally applicable to nonconsensual pornography, which inflicts most of the same harms on its victims:

> Indeed, where pornography involves real children, courts firmly protect victims rather than platforms. In *United States v. Hotaling*, the Second Circuit ruled that morphing actual children's faces onto adult bodies performing sexual acts is not protected speech under the First Amendment.  There, John Hotaling superimposed the images of female minors' heads over images of nude adult females engaging in sexual conduct and labeled the pictures with the minors' first names.  The Second Circuit reiterated that the "underlying inquiry is whether an image of child pornography implicates the interests of an actual minor" and followed an Eighth Circuit decision [*Anderson*] that found minors' interests are implicated when pornography includes their

7

"recognizable face." The *Hotaling* court deftly distinguished *Free Speech Coalition* with a reminder that in *Free Speech Coalition*, "no actual person's image and reputation were implicated, [whereas in *Hotaling*] we have six identifiable minor females who were at risk of reputational harm and suffered the psychological harm of knowing that their images were exploited and prepared for distribution by a trusted adult." The court paid notable attention to the scope of harm in reaching its decision: Not only were minors the only recognizable people in the photos, but the labels including their actual names bolstered the connection between the photos and the minors, increasing the risk of reputational and psychological harm. And while the "harm begins when the images are created," it does not end there-victims are "haunted for years by the knowledge of [NCP's (Non-Consensual Pornography)] continued circulation."

Deep fake NCP causes these same harms. While the *Hotaling* court relied on the government's more specific compelling interest in protecting minors to outweigh First Amendment considerations, the government has at least a legitimate interest, if not a compelling interest, in protecting public health. Public health includes both minors and adults, and it reaches both mental and physical health, encompassing the full range of deep fake NCP victims and a considerable subset of its harms.

28 Rich. J.L. & Tech. at 225-226.

### ii.    Defendant violated 18 U.S.C. § 2252A.

Defendant contends "this is not a case of child pornography" because "the alleged pictures are nothing more than computer generated images from **adult bodies**," [Doc 20 at p. 3 (emphasis added)], but this factually unsupported speculation is untrue and contrary to law. The nude images Defendant created and disseminated depict Jane Does's ***actual face*** and ***her actual body***. As a matter of law, those images are "child pornography," regardless of whether Defendant used a computer to

generate them. *Hotaling*, 634 F.3d at 728-730; *Anderson*, 759 F.3d at 894-895; *Acheson*, 195 F.3d at 650-652; *Boland*, 698 F.3d at 881-884; *Mecham*, 950 F.3d at 264-265; *Payne*, 394 Fed. App'x at 896. *Boland* is particularly instructive. In that case, the Sixth Circuit affirmed the conviction of a technology expert and lawyer hired to help a defendant facing child pornography charges for downloading images of children from a stock photography website and digitally imposing the children's faces onto the bodies of adults performing sex acts to show the defendants may not have known they were viewing child pornography. 698 F.3d at 879.

Likewise, the nude images Defendant created fall squarely within the statutory definition of "child pornography":

> any visual depiction, including any photograph, film, video, picture, or **computer or computer-generated image or picture**, **whether made or produced by electronic, mechanical, or other means**, of sexually explicit conduct, where—
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image **that is, or is indistinguishable from,** that of a minor engaging in sexually explicit conduct; or
>
> (C) such visual depiction has been **created, adapted, or modified to appear that an identifiable minor** is engaging in sexually explicit conduct.

18 U.S.C.A. § 2256(8) (emphasis added). Congress enacted the amended definition to of child pornography to include a "computer or computer-generated image or picture,

whether made or produced by electronic, mechanical, or other means" and "a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor" in 2003 (in the wake of *Ashcroft*, 535 U.S. 234 (2002)). *Payne*, 394 Fed. App'x at 896.

The uncontested allegations in the Verified Amended Complaint [Doc. 7 at ¶¶ 17-18] establish that Defendant used a photo taken of Jane Doe when she was **14 years old** that depicts her posing for a picture taken by another person in a public setting in which Jane Doe's face and the entire front side of her (clothed) body, including her chest and pelvis, are visible. The nude version of this photo shows Jane Doe's genitals or pubic area, as well as her breasts, and portrays Jane Doe as willingly posing for a nude photo taken by another person. Defendant used ClothesOff to "*strip [Jane Doe] naked*," resulting in a "lascivious exhibition of the anus, genitals, or pubic area of **any person**." *Id.* at § 2256(2) (emphasis added); Doc. 7 at ¶¶ 18, 25, 37, 57, 59; Doc. 4-1 at pp. 15-16.[1]

The process through which *ClothesOff* generated the nude portions of Jane Doe's body is legally irrelevant because it is illegal to create pornography by transposing the

---

[1] Whether an image constitutes a "lascivious exhibition" is determined based on several objective, non-exhaustive factors, such as the focal point of the image, its setting, extent of nudity, the depicted child's age and pose, any suggestions of sexual coyness or willingness to engage in sexual activity, and intent to elicit a sexual response in the viewer. *U.S. v. Heinrich*, 57 F.4th 154, 161 (3d Cir. 2023); *U.S. v. Larkin*, 629 F.3d 177, 182-185 (3d Cir. 2010); *U.S. v. Villard*, 885 F.2d 117, 121-123 (3d Cir. 1989). These factors are "simply helpful guidelines, not a checklist to be applied mechanically," and the ultimate inquiry is holistic" and based on the "overall content of the visual depiction, taking into account the age of the minor." *Id.*

heads and faces of actual minors onto the bodies of others—regardless of whether the bodies onto which they are transposed are adults, other children, or computer generated. *Hotaling*, 634 F.3d at 728-730; *Anderson*, 759 F.3d at 894-895; *Acheson*, 195 F.3d at 650-652; *Boland*, 698 F.3d at 881-884; *Mecham*, 950 F.3d at 264-265; *Payne*, 394 Fed. App'x at 896. Here, the conduct at issue is worse because the images depict Jane Doe's and the other girls' actual faces **and their actual bodies.**

Defendant's suggestion that "the alleged pictures are nothing more than computer generated images from adult bodies" [Doc. 20 at p. 3] is rank speculation. Defendant offers no proof to support this proposition and no such proof exists because the images at issue in this case are not of an unidentified adult's body—they are of Jane Doe's body. Moreover, the proposition that only "adult bodies" are used by AI systems when they create pornography is highly suspect because a recent Stanford Internet Observatory study found that thousands of images of children were used by one AI system to produce realistic and explicit imagery "**to transform social media photos of fully clothed real teens into nudes**."[2]

### iii.    Defendant Violated N.J.S.A. 2A:58D-1.

For the same reasons explained in sub-section i., above, Defendant's conduct also violates New Jersey's nonconsensual pornography statute (N.J.S.A. 2A:58D-1).

---

[2] *See* "*AI image generators are being trained on explicit photos of children, a study shows*," Matt O'Brien and Halelluya Hadero, AP News, Dec. 20, 2023 [https://apnews.com/article/generative-ai-illegal-images-child-abuse-3081a81fa79e2a39b67c11201cfd085f] (emphasis added); Identifying and Eliminating CSAM in Generative ML Training Data and Models, Thiel, D., Stanford Internet Observatory, Dec. 23, 2023 [https://purl.stanford.edu/kh752sm9123].

Defendant reproduced and disclosed the image of another person whose intimate parts are exposed without that person's consent. N.J.S.A. 2A:58D–1a; *Soliman v. Kushner Companies, Inc.*, 433 N.J. Super. 153, 175–76 (App. Div. 2013). Defendant argues the alleged "'exposed intimate body parts' are not of another person…[but rather]….computer generated synthetic images" [Doc. 20 at p. 4], but this argument ignores the plain language of the statute providing for a civil action against a defendant who "reproduces, in any manner,…the exposed intimate parts of another person…" N.J.S.A. 2A:58D–1

Here, the Defendant "reproduced" an image of Jane Doe in which her intimate private parts are exposed and disclosed that nonconsensual nude photo to Jane Doe's classmates and possibly others. The actual depiction of Jane Doe's face and body in the nude images Defendant created is just as actionable under the New Jersey statute as it is under the CPPA. *State v., Higginbotham*, 475 N.J.Super. 205, 219 (2023) (also discussing *Hotaling*, 634 F.3d at 728-730; *Anderson*, 759 F.3d at 894-895; *Acheson*, 195 F.3d at 650-652; *Boland*, 698 F.3d at 881-884; *Mecham*, 950 F.3d at 264-265; *Payne*, 394 Fed. App'x at 896).

#### iv.    Plaintiff's common law tort claims are viable.

The Opposition baldly asserts that Plaintiff's common law tort claims are not viable because they "require an intent element" and supposedly "Plaintiff has failed to highlight any facts that show that Defendant intended to intentionally harm Plaintiff" [Doc. 20 at p. 4]. But Plaintiff's Verified Complaint asserts facts demonstrating that Defendant deliberately created nude images depicting Jane Does's ***actual face*** and her

*actual body* and disseminated them to Jane Does's classmates.  *See* Doc. 7 at ¶¶ 17, 19, 25, 29, 80, 84-86, 93-97, 104-105.  Defendant's intent is also obvious from the fact that he did not use his smart phone or computer to generate nude images of fictional or "anime" characters.  He consciously selected and used a photo of Jane Doe from her Instagram account and uploaded it to an AI system designed to "undress" girls and women because he wanted to and did create a nude image *of Jane Doe*.  *See* Doc. 7 at ¶¶ 15-17, 19, 21, 23-25.  As explained in Plaintiff's Memorandum of Law [Doc. 4-1 at pp. 17-18], Defendant's misconduct and its resulting harms sufficiently establish all the elements of each of Plaintiff's tort claims.

**B.    Plaintiff Makes a Clear Showing Of Imminent, Irreparable Harm.**

Defendant argues Jane Doe fails to make a clear showing of immediate, irreparable harm because  she and her parents cooperated with a criminal investigation and any harm Jane Doe suffers is "merely a possibility, speculative, and remote." [Doc. 20 at pp. 4-5]  Both arguments fail on the merits.

As a matter of law, Jane Doe has already suffered and will continue to suffer substantial irreparable harm, none of which is "speculative."[3]  *Hotaling*, 634 F.3d at 728-730, *Anderson*, 759 F.3d at 894-895, and *Acheson*, 195 F.3d at 650-652.  Jane Doe

---

[3] To demonstrate irreparable harm, a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 407–08 (3d Cir. 2021) (quotations and citations omitted).  "The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.* (quotations and citations omitted).  To meet its burden, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Kolawole O.T. v. Ahrendt*, 466 F. Supp. 3d 457, 466 (D.N.J. 2020).

will be "victimized every time the picture [of her] is displayed." *Anderson*, 759 F.3d at 895-896 (citation omitted). Even "morphed images' 'continued existence causes the child victims continuing harm by haunting the children for years to come.'" *Id.*

The Kobriger Article, upon which Defendant relies, discusses the irreparable and immediate harm at issue in this case:

> NCP is a critical threat to its victims' physical, mental, and financial health. A 2017 study of more than 3,000 victims of NCP observed increased somatic symptoms and decreased mental health inventory in victims. Victims of NCP report offline, in person conduct that threatens their physical wellbeing, such as harassment and stalking as a result of the NCP. The experience almost universally tolls their mental health, with a staggering 51% of victims reporting suicidal thoughts and 93% reporting significant emotional distress resulting from the NCP. The mental health effects are similar to those experienced by rape survivors. NCP also impacts victims' financial wellness by impairing their occupational functioning, which can force them to take time off work or school, cause them to drop out of school, or even result in termination from employment. More than half of victims fear that the NCP will affect their professional advancement even decades into the future.

28 Rich. J.L. & Tech. at 209-210 (citations omitted); *see also U.S. v. Oliveri*, 2012 WL 1118763, *3-4 (D. N. J. Apr. 3, 2012) ("In addition to these psychological harms, each viewing of these images violates the victim's privacy. 'Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.'" (citing *Ashcroft*, 535 U.S. at 249)).

"Possessors of child pornography victimize the children whose sexual abuse is depicted therein by causing additional, distinct harms to the victims' mental health.

14

Even if there were no additional mental repercussions, possessors victimize these children by violating their privacy." *Oliveri*, 2012 WL 1118763 at *5. "Because children are harmed by the knowledge that depictions of their sexual abuse are being viewed, all children depicted in child pornography are victims of the crimes of possession and distribution." *Id.*

Such harms are compounded by the fact that "deepfake" pornography "evades detection and spread[s] rapidly….ha[s] the power not only to fool people but to fool people quickly and widely…[and]…can quickly go viral as [it] spread[s] across platforms, many of which are international." 28 Rich. J.L. & Tech. at 217-219. "Even if a platform removes the content, individual users can screenshot, save, and re-publish information at a speed that outpaces removal moderation." *Id.* at 219.

The temporary restraining order and preliminary injunction Jane Doe seeks are narrowly tailored, necessary, and appropriate to prevent all of these immediate and irreparable harms. As noted above, Defendant's Opposition takes the position that his conduct is completely lawful and that he is free to continuing engaging in it.

Defendant's contention that Jane Doe should be denied temporary injunctive relief because she "waited months before bringing an order to show cause after a criminal investigation was closed and there were no criminal charges" [Doc. 20 at p. 5] is equally unfounded. Plaintiff did not waive any rights or her entitlement to preliminary injunctive relief by cooperating with and allowing the criminal investigation to run its course before pursuing a civil action against Defendant. As alleged in the Verified Amended Complaint, Jane Doe and her parents believed the

authorities would take some actions "to hold Defendant accountable for his conduct, ensure the Nude Photos had been deleted, determine the extent of their dissemination, and try to ensure that no further dissemination occurred." Doc.; 7 at ¶ 36. As soon as they were told that was not going to happen, they promptly filed suit.

## C.    The Balance Of The Hardships Weighs Heavily In Favor Of Plaintiff and Granting Injunctive Relief Is In The Interest Of The Public.

Defendant suggests the balance of hardships and public interest do not weigh in Plaintiff's favor[4] [Doc. 20 at p. 5] because "Plaintiff has admitted that the body in the alleged CGI synthetic pictures is not hers"—which is not true—and because "it's no one's body because it is computer generated"—which also is untrue and (as explained above) does not matter. The nude images at issue in this case depict Jane Doe's actual face and her actual body. Defendant's contention that the balance of hardships does not weigh in Plaintiff's favor because the "criminal investigation yielded no charges" is equally flawed and ignores the fact that charges were not filed against Defendant due to lack of cooperation and access to evidence. *See* Doc. 7 at 36.

Defendant does not contend he would suffer any injury if an injunction issues[5] and there is no such injury. Defendant also does not refute that society and the

---

[4] "'[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.'" *Port Auth. of Allegheny Cnty.*, 39 F.4th at 109 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).

[5] "Before granting an injunction, a district court must balance the relative harm to the parties, *i.e.*, the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (internal citation omitted).

government have a compelling interest in protecting minors from becoming victims of child pornography and protecting women and girls from becoming the victims of nonconsensual pornography because of the substantial psychological, reputational, and emotional harm such materials impose on them, as well as an interest in protecting the privacy rights of citizens. *Hotaling*, 634 F.3d at 728; *Wolfson v. Lewis*, 924 F. Supp. 1413, 1425 (E.D. Pa. 1996).

## II.    DISCOVERY SHOULD <u>NOT</u> BE STAYED—IT SHOULD BE EXPEDITED.

Defendant's Opposition not only contests expedited discovery, but also argues that all discovery should be stayed. *See* Doc. 20 at p. 5. This incredible position lacks any factual or legal support and should be rejected. Plaintiff's moving papers establish more than sufficient grounds to expedite discovery [Doc. 4-1 at pp. 23-25], which Defendant's Opposition does not refute. To the contrary, Defendant's lack of remorse and accountability reinforces the need to grant the expedited discovery Plaintiff seeks. As noted above, Defendant provided no assurances or promises that his conduct ceased and would not continue, and his Opposition asserts that preservation of his electronic devices "can be **[not has been]**addressed pursuant to a litigation hold" [Doc. 20 at p. 5 (emphasis added)].

## III.   BOTH PLAINTIFF AND DEFENDANT SHOULD BE PERMITTED TO PROCEED UNDER PSEUDONYMS.

Defendant agrees that Plaintiff and her parents should be permitted to proceed under pseudonyms and, for the reasons explained in Plaintiff's moving papers [Doc. 4 at pp. 22-23], such relief is legally warranted in this case.

## CONCLUSION

Based on the foregoing and Plaintiff's moving papers [Doc. 4], Plaintiff has demonstrated a clear legal right to all the temporary relief she seeks, to proceed under a pseudonym, and for expedited discovery.  Plaintiff respectfully requests the entry of an order granting the same.

Dated this 13th day of February, 2024.         Respectfully submitted,

*/s/ Shane B. Vogt*
Shane B. Vogt – FBN 257620
E-mail:  svogt@tcb-law.com
David A. Hayes - FBN 096657
E-mail:  dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 834-9191
Fax: (813) 443-2193

*Attorneys for Plaintiff,* **Pro Hac Vice**

*/s/ John Gulyas*
Jon-Henry Barr, Esq. (Atty. ID #001561996)
Email: jhbarr@barrgulyas.com
John Gulyas (Atty ID # 023281999)
Email: jgulyas@barrgulyas.com
BARR & GULYAS, L.L.C.
21 Brant Avenue
Clark, New Jersey 07066
(732) 340-0600

*Co-Counsel/Local Counsel  for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 13, 2024, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ John Gulyas*
Attorney