|  |  |
|---|---|
| JANE DOE, a minor, through her parents and legal guardians, JANE ROE and JOHN ROE, | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, |  |
| v. | No. 2:24-cv-00634-ES-JBC |
| JOHN SMITH, a minor, by and through his parent(s) and legal guardian(s), JOE SMITH and JANE SMITH, | **Oral Argument Requested** |
| Defendant. | Return Date:  December 16, 2024 |

---

### BRIEF OF DEFENDANT JOHN SMITH IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

---

Christopher D. Adams
Marjan Moussavian
Taylor A. Collins
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
cadams@mccarter.com
mmoussavian@mccarter.com
tacollins@mccarter.com

*Attorneys for Defendant*
*John Smith*

ME1 51312989v.5

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ........................................................................................................4

I.     Joe Smith and Jane Smith cannot be found liable under N.J.S.A.
       2A:53A-17.1 for demonstrating willful or wanton disregard in the
       exercise of supervision and control of the conduct of their minor son
       John Smith because he has not been adjudicated delinquent of cyber-
       harassment pursuant to N.J.S.A. 2C:33-4.1......................................................6

II.    Plaintiff fails to allege facts sufficient to support a claim of negligence
       against John Smith's parents ...........................................................................8

       A.     The generalized and conclusory allegations in the proposed
              amended pleading do not justify the creation of a new duty of
              care under New Jersey law....................................................................9

       B.     Plaintiff fails to allege facts sufficient to plead a theory of
              general negligence liability against John Smith's parents .................21

       C.     The doctrine of parental immunity bars Plaintiff from bringing
              a negligent supervision claim against John Smith's parents..............23

III.   Plaintiff fails to allege facts sufficient to support her claim of
       spoliation/fraudulent concealment.................................................................26

IV.    The proposed conspiracy count alleged against John Smith is futile
       because it does not allege facts that plausibly suggest a meeting of the
       minds.............................................................................................................30

CONCLUSION ...................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Alvin v. Suzuki*,
   227 F.3d 107 (3d Cir. 2000) ................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................5

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ................................................................5

*Chruby v. Kowaleski*,
   534 F. App'x 156 (3d Cir. 2013) ................................................................31

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016) ................................................................5

*Moore v. Solanco School District*,
   471 F.Supp.3d 640 (E.D. Pa. 2020)........................................................21, 30

*Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*,
   348 F.Supp. 2d 322 (D.N.J. 2004)................................................................27

*Mullin v. Balicki*,
   875 F.3d 140 (3d Cir. 2017) ................................................................22

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
   594 F.3d 238 (3d Cir. 2010) ................................................................4

**STATE CASES**

*Acuna v. Turkish*,
   192 N.J. 399 (2007) ................................................................9

*Buono v. Scalia*,
   179 N.J. 131 (2004) ................................................................23, 24, 25

*Coleman v. Martinez,*
247 N.J. 319 (2021) ...........................................................................11, 12, 20

*Estate of Desir v. Vertus,*
214 N.J. 303 (2013) ........................................................................................20

*Foldi v. Jeffries,*
93 N.J. 533 (1983) ..........................................................................................23

*J.S. v. R.T.H.,*
155 N.J. 330 (1998) ..................................................................................13, 14

*Jerkins ex. rel. Jerkins v. Anderson,*
191 N.J. 285 (2007) ........................................................................................12

*Mazzili v. Selger,*
13 N.J. 296 (1953) ..........................................................................................21

*Rosenblit v. Zimmerman,*
166 N.J 391 (2001) ..........................................................................................26

*Vizzoni v. B.M.D.,*
459 N.J. Super. 554 (App. Div. 2019) .............................................................8

**FEDERAL STATUTES**

15 U.S.C. § 6851 .........................................................................................3, 30

18 U.S.C. § 1466A ....................................................................................28, 29

18 U.S.C. § 2252A .....................................................................3, 28,  29, 30

18 U.S.C. § 2252A(a)(5) .................................................................................28

**STATE STATUTES**

N.J.S.A. 2A:4A-20 – n. ......................................................................................7

N.J.S.A. 2A:4A-23 .............................................................................................7

N.J.S.A. 2A:53A-17.1 ........................................................................................7

N.J.S.A. 2C:24-4 .....................................................................................1, 9, 10

iii

N.J.S.A. 2C:33-4 ...........................................................................................4, 6, 7

**RULES**

Fed. R. Civ. P. 12(b)(6) .........................................................................*passim*

Fed R. Civ. P. 12(f) ....................................................................................2, 10

**REGULATIONS**

N.J.A.C. § 13:91-1.3 .........................................................................................7

Defendant John Smith, by and through his parents and legal guardians, Joe Smith and Jane Smith ("John Smith"), and by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to the motion for leave to amend filed by Plaintiff Jane Doe, a minor, by and through her parents and legal guardians, Jane Roe and John Roe ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff seeks leave to amend the First Amended Complaint to, among other things, add a conspiracy count against John Smith for allegedly entering into an agreement with his friend John Jones to create, possess, and share artificial intelligence ("AI") generated nude images of Plaintiff (the purported "AI Generated Nude Photos"), *see* proposed Second Amended Compl. ("2d Amended Compl."), Count XV, and add John Smith's parents, Joe Smith and Jane Smith, as defendants and assert direct claims against them for negligence, spoliation/fraudulent concealment, and civil liability under N.J.S.A. 2A:53A-17.1. *Id.*, Counts XVI, XVII, and XVIII. Because these proposed counts fail to meet the Rule 12(b)(6) standard to survive a motion to dismiss, the proposed Second Amended Complaint is futile, and Plaintiff's motion for leave to amend must be denied. Further, the Court should strike from the proposed Second Amended Complaint the reference to N.J.S.A. 2C:24-4 in Paragraph 231 of Count XVI, as

this allegation is not only incorrect as a matter of law, but, further, constitutes a scandalous matter under Rule 12(f).

## STATEMENT OF FACTS

Plaintiff alleges in the proposed Second Amended Complaint that she attends the same high school with John Smith and John Jones in Union County, New Jersey (the "School"). *See* 2d Amended Compl., ¶ 17. Plaintiff further alleges that "[l]ike most young people, [she] socialized with her friends and classmates on social media, including using platforms such as Instagram to occasionally share photos of herself with a select group of friends." *Id.*, ¶ 15.

Plaintiff asserts that one day, "John Smith and John Jones sent [Plaintiff] friend requests on Instagram, which she accepted, [thereby] providing [John Smith and John Jones with] access to view [Plaintiff's] Instagram posts." *Id.*, ¶ 16. Plaintiff further alleges that she was thereafter "exploited and violated when. . . John Smith and John Jones agreed to use" their smartphones, the Internet, an AI application or website called ClothesOff, as well as social media, including, Instagram and Snapchat, to create, possess, and share purported AI Generated Nude Photos of students who also attended their School. *See, e.g.*, 2d Amended Compl., ¶¶2, 14-44.[1]

---

[1] Jane Doe is the only plaintiff in this action. Accordingly, Plaintiff's references to other minor girls and the AI generated "nude photos" that were allegedly created using these non-parties' images and likenesses are excluded from this

Next, Plaintiff alleges that on or around October 20, 2023, John Smith and John Jones were "caught" by the School and that the administration sent an email to parents of students notifying them about the alleged creation and sharing of the purported AI Generated Nude Photos. *Id.*, ¶¶ 45, 51. In addition, Plaintiff alleges that she and her parents did not learn about the existence of the purported AI Generated Nude Photos until October 20, 2023. *Id.*, ¶ 45. An investigation into the alleged incident was launched by the Westfield Police Department, but "on January 24, 2024, Plaintiff and her parents were informed "that charges could not [be] pursued at that time because the facts gathered by [the] [S]chool could not be used to support the investigation. . . ." *Id.*, ¶¶ 48-49. Plaintiff further alleges that "Defendants, John Smith and John Jones, and others with whom they shared the images or knew of their existence, failed to cooperate with, speak to, or provide access to their electronic devices to law enforcement." *Id.*, ¶ 49.

On February 2, 2024, Plaintiff brought an action against John Smith for allegedly creating, possessing, and sharing the purported AI Generated Nude Photos in violation of 15 U.S.C. § 6851 (Count I), 18 U.S.C. § 2252A (Count II), and N.J.S.A. 2A:58D-1 (Count III), as well as allegedly committing the torts of invasion of privacy (Counts IV and V), intentional infliction of emotional distress (Count VI), and negligence (Count VII). [ECF 1].

---

memorandum of law, as Plaintiff lacks standing to bring claims against the defendants on behalf of the other individuals she claims have been harmed.

On February 5, 2024, Plaintiff amended the complaint to add John Smith's parents to the case caption in their capacity as his legal guardians. [ECF 2]. More than nine months later, on November 25, 2024, Plaintiff filed the motion for leave to amend to add John Smith's parents, Joe Smith and Jane Smith, as defendants, as well as Joe Smith, and Joe Smith's parents, Joe Jones and Jane Jones, to the operative complaint. [ECF 68] In addition, the motion for leave to amend seeks to amend Plaintiff's pleading to add, among other things, a conspiracy count against John Smith (Count XV), as well as direct claims against John Smith's parents for negligence (Count XVI), spoliation/fraudulent concealment (Count XVII), and liability under N.J.S.A. 2A:53A-17.1 for allegedly demonstrating willful or wanton disregard of a minor adjudicated delinquent of cyber-harassment pursuant to N.J.S.A. 2C:33-4 (Count XVIII). *Id.*

## ARGUMENT

A proposed amended complaint "is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). In determining whether the amendment would be futile, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (cleaned up).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675) (alterations in original). Second, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth") (cleaned up); *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations in original). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation

5

of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).

Here, the proposed counts against John Smith (Count XV) and John Smith's

parents (Counts XVI, XVII, and XVIII) in the proposed Second Amended

Complaint fail to meet this requisite pleading standard. Consequently, Plaintiff's

motion for leave to amend must be denied.

**I. Joe Smith and Jane Smith cannot be found liable under N.J.S.A. 2A:53A-17.1 for demonstrating willful or wanton disregard in the exercise of supervision and control of the conduct of their minor son John Smith because he has not been adjudicated delinquent of cyber-harassment pursuant to N.J.S.A. 2C:33-4.1**

Plaintiff alleges that "[i]n engaging in the conduct set forth in Paragraphs

33-44 [of the proposed Second Amended Complaint,] John Smith committed

cyberharassment in violation of N.J.S.A. 2C:33-4.1." Proposed 2d Amended

Compl., ¶ 250. She further alleges, "[a]s parents and guardians of John Smith,

Defendants, Joe Smith and Jane Smith, acted willfully and wantonly in the exercise

of the supervision and control of John Smith by engaging in the acts and omissions

set forth in Paragraphs 51-55 [of the proposed Second Amended Complaint]." *Id*.

at ¶ 251. Finally, she pleads, "[p]ursuant to N.J.S.A. 2A:[5]3-17.1 and N.J.S.A.

2C:33-4.1, Joe Smith and Jane Smith may be held civilly liable for John Smith's

cyberharassment of [Plaintiff]." *Id*. at ¶ 253.

The allegations in Count XVIII of the proposed Second Amended Complaint are insufficient to establish a claim against John Smith's parents under the statute. To be clear, N.J.S.A. 2A:53A-17.1 provides:

> Notwithstanding any other provision of law to the contrary, a parent or guardian having legal custody of a minor who demonstrates willful or wanton disregard in the exercise of the supervision and control of the conduct of a minor ***adjudicated delinquent of cyber-harassment***, pursuant to section 1 of P.L.2013, c. 272 (C.2C:33-4.1), or harassment, pursuant to N.J.S.2C:33-4, may be liable in a civil action.

*Id*. (emphasis added).

This statute, which was passed in 2021 and put into effect on January 10, 2022, has yet to be cited by a New Jersey court in any matter addressing potential liability of a parent for the alleged harm committed by his or her child against another.  In this instance, however, New Jersey case law need not be referenced, because a plain reading of the statute indicates that in order for a claim to be brought against a parent under N.J.S.A. 2A:53A-17.1, his or her child must first be adjudicated delinquent of cyber-harassment under N.J.S.A. 2C:33-4.1. "Deliquency" as defined in the New Jersey Code of Juvenile Justice, N.J.S.A. 2A:4A-20 *et seq.* "means the commission of an act by a juvenile which if committed by an adult would constitute. . .[a] crime; [a] disorderly persons offense or petty disorderly persons offense; or [a] violation of any other penal statute, ordinance or regulation."  N.J.S.A. 2A:4A-23.  "'Adjudicated delinquent' means

7

an individual found by a court to have committed an act of delinquency." N.J.A.C.

§ 13:91-1.3; *see also* NEW JERSEY COURTS, JUVENILE DELINQUENCY PROCEEDINGS

AND YOUR CHILD: A GUIDE FOR PARENTS AND GUARDIANS 12 (adjudication means

"[a] determination by a judge that a juvenile has or has not committed the

charge(s) listed in the complaint").[2]

Because John Smith has not been adjudicated delinquent of cyber-

harassment in a juvenile proceeding, N.J.S.A. 2A:53A-17.1 does not, and cannot,

apply to Joe Smith and Jane Smith, and Plaintiff's attempt to bring a private right

of action against them under this statute for their son's alleged cyber-harassment

is futile.

## II. Plaintiff fails to allege facts sufficient to support a claim of negligence against John Smith's parents

To state a claim for negligence, a plaintiff must plead four elements:

"(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4)

damages." *Vizzoni v. B.M.D.*, 459 N.J. Super. 554, 568 (App. Div. 2019) (quoting

*Polzo v. City of Essex*, 196 N.J. 469, 484 (2008)) (cleaned up).

Here, Plaintiff seeks to hold John Smith's parents liable for negligence by

proffering the creation of a novel theory of negligence liability and new duty of

care under New Jersey law as well as seeking redress under traditional general

---

[2] A copy of this guide is made available on the New Jersey Courts website:
https://www.njcourts.gov/sites/default/files/forms/11358_juv_delq_proc_child.pdf.

negligence and negligent supervision theories.  *See* 2d Amended Compl., Count XVI, ¶¶ 230-239.  Because these attempts as pled would be futile, Count XVI of the proposed Second Amended Complaint should not be added to Plaintiff's operative pleading.[3]

### A. The generalized and conclusory allegations in the proposed amended pleading do not justify the creation of a new duty of care under New Jersey law

Plaintiff fails to sufficiently plead that a new duty of care is owed to her under New Jersey law by John Smith's parents.  "A duty is an obligation imposed by law requiring one party to 'conform to a particular standard of conduct toward another.'" *Acuna v. Turkish*, 192 N.J. 399, 413 (2007) (quoting Prosser & Keeton on Torts: Lawyer's Edition § 53, at 356 (5th ed. 1984)).

The proposed Second Amended Complaint alleges, in conclusory fashion, that John Smith's parents "owed Plaintiff a duty of care evidenced by, among other things, the statutory duties under N.J.S.A. 2C:24-4."  2d Amended Compl., ¶ 231.

---

[3] The conclusory allegation that "Defendants, Jane Smith and Joe Smith, breached their duties of care to [Plaintiff] by engaging in the conduct set forth in Paragraphs 51-55" of the proposed Second Amended Complaint as well as the allegation that they should have provided Plaintiff with "evidence enabling her to prove her claims alleged in this action against John Smith and John Jones and to take steps to identify everyone who viewed and had access to the [AI Generated] Nude Photos. . . ." alleges intentional rather than negligent conduct, and is duplicative of the spoliation/fraudulent concealment claim set forth in Count XVII.  *See* 2d Amended Compl., ¶¶ 234-235; *compare id.*, ¶¶ 240-248.  Its futility is addressed in detail in Point II of this memorandum of law.

However, a plain reading of this statute, which concerns endangering the welfare of children, clearly shows that its provisions are inapplicable to the facts alleged against Joe and Jane Smith in the proposed amended pleading.  Nowhere in the proposed Second Amended Complaint is it alleged that Joe Smith and Jane Smith engaged in sexual conduct that would "impair or debauch the morals of" Plaintiff. *See* N.J.S.A. 2C:24-4(a)(1).  Further, nowhere in the proposed Second Amended Complaint is it alleged that Joe Smith and Jane Smith engaged in conduct that would make Plaintiff "an abused or neglected child" as defined by statute.  *See* N.J.S.A. 2C:24-4(2).  Plaintiff's brazen attempt to distort the meaning of this criminal statute and import a duty of care for establishing negligence liability in an unrelated context not only fails under the Rule 12(b)(6) standard, but should also be stricken from the proposed amended pleading as scandalous under Rule 12(f).

In addition, the proposed Second Amended Complaint alleges that John Smith's parents owed Plaintiff a duty of care because they "had access to, control over, and supervision over John Smith, his smart phone, his social media accounts, and the electronic systems he used to access ClothesOff and Snapchat, . . . [and, therefore,] could and should have prevented John Smith from creating and distributing the [AI Generated] Nude Photos. . . ."  *See* 2d Amended Compl., ¶ 234.  Further, they owed Plaintiff a duty of care "to protect and prevent her from suffering additional harm and damages once they were informed of, knew about,

and/or reasonably should have known about John Smith's misconduct. . . ." *Id.*, ¶ 233.

The duty that Plaintiff is seeking to impose on Joe Smith and Jane Smith does not exist under New Jersey law. Instead, Plaintiff is asking this Court to impose a new duty on John Smith's parents—and all New Jersey parents—that would require them to (a) prohibit their adolescent child from using a wide array of technology, including, without limitation, smartphones, the Internet, and social media, without their 24/7 supervision; or (b) prohibit their adolescent child from using such technology altogether, and would hold those parents directly liable for any harm that is found to be committed by their adolescent child against another if it is determined that such conduct was executed through or facilitated by the use of such technology.

This question of creating a new duty under New Jersey law, if considered at all, should be addressed in state rather than in federal court. *See Coleman v. Martinez*, 247 N.J. 319, 338 (2021) (determining "whether a duty of care should be found with respect to harm caused by a third party is a particularly "'uncertain. . . area of tort law'" (alteration in original) (citing *McKesson v. Doe*, 592 U.S. 1, 6 (2020)) (concluding that the Fifth Circuit should not have ventured into an area of tort law concerning the imposition of a new duty under Louisiana law, which was "laden with value judgments and fraught with implications for First Amendment

rights, without first seeking guidance on potentially controlling Louisiana law from the Louisiana Supreme Court"). But if this Court were to consider this matter of first impression, the facts alleged in the proposed Second Amended Complaint, taken as true, do not warrant the establishment of the new duty that Plaintiff is seeking to impose.

When conducting such an analysis, a court must first consider the foreseeability of harm to a potential plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty. *See Jerkins ex. rel. Jerkins v. Anderson*, 191 N.J. 285, 294 (2007).

As for step one, "foreseeability as a component of a duty to exercise due care is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis." *See Coleman*, 247 N.J. at 339 (citing *Weinberg v. Dinger*, 106 N.J. 469, 484-85 (1987)). That knowledge may be "actual" or "constructive". *Id.* (citing *Carvalho v. Toll Bros. and Developers*, 143 N.J. 565, 576-77 (1996)). Accordingly, "when the risk of harm is that posed by third persons, a plaintiff may be required to prove that [the] defendant was in a position to 'know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[]' that was 'likely to endanger the safety' of another." *Id.* (alterations in original) (citing *Clohesy v. Food Circus Supermarkets, Inc*., 149 N.J

496, 507 (1997)).  Further, "careful consideration of the factual circumstances is even more vital when the duty arises in a novel context." *Id*. at 340.

Here, the issue of whether a new duty should be imposed on parents of adolescent children is a novel one, as it concerns the unique parent-child relationship, implicates constitutional and civil rights issues (including freedom of speech, the individual right to privacy, and the right of parents to direct the upbringing and education of their children), and must also take into account outside influences and the ubiquitous and readily accessible nature of the rapidly developing technology at issue, including, without limitation, smartphones, the Internet, and social media.

Plaintiff's proposed Second Amended Complaint offers no facts that take the novelty of the context into account.  Further, it contains no allegations about what John Smith's parents knew or should have known about their teenage son prior to his engaging in the alleged conduct that purportedly harmed Plaintiff.  What is more, it contains no allegations that John Smith made any additional AI Generated Nude Photos after his parents were allegedly notified by the School on or around October 20, 2023 about their son's alleged conduct, which is the same day that Plaintiff's parents were purportedly notified about same.  *See* 2d Amended Compl., ¶¶ 45, 51.

13

Even if the Proposed Second Amended complaint adequately pled foreseeability in this two-step duty analysis (it does not), imposing such an onerous duty on parents of adolescent children lacks foundation in accepted principles of fairness and policy. *See, e.g.*, *J.S. v. R.T.H.*, 155 N.J. 330, 339 (1998) ("Ultimately, the determination of the existence of a duty is a question of fairness and public policy") (citing *Clohesy*, 149 N.J at 502). When conducting the second step in the analysis of whether a new duty should be created under New Jersey law, a "court[] must draw on 'notions of fairness, common sense, and morality." *Id.* (quoting *Hopkins v. Fox & Lazo Realtors*, 132, N.J. 426, 443 (1993)). Further, "[p]ublic policy must be determined in the context of contemporary circumstances and considerations." *Id.* (citing *Kelly v. Gwinnell*, 96 N.J. 538, 544-45 (1984)) ("noting that in a society growing increasingly intolerant of drunken driving, the imposition of a duty on social hosts 'seems both fair and fully in accord with the State's policy'"). What is more, the scope of a duty "must be 'reasonable' under the circumstances. . . . Factors to be taken into consideration include the risk of harm involved and the practicality of preventing it." *Id.* at 339.

Here, imposing the new duty that Plaintiff is proposing on John Smith's parents—and all parents raising adolescent children in New Jersey—would be fundamentally unfair and contravene public policy, for reasons including that it

would be unreasonable, impractical, and impossible for parents to execute.  What is more, if imposed, this new duty and novel theory of negligence would open the floodgates of intrusive litigation initiated by emotional parents of hundreds, if not thousands, of adolescent children that would not only consume New Jersey and federal court resources, but society's as well.

It is common knowledge that technology, such as smartphones, the Internet, and social media have become entrenched in our society, and that such technology is used for a wide array of purposes including, without limitation, communication, education, and socialization.  Plaintiff even acknowledges in the proposed Second Amended Complaint that such technology is used by "most young people. . . ."  2d Amended Complaint, ¶ 15.[4]  Taking these realities into consideration further supports that the generalized and conclusory allegations set forth by Plaintiff in the proposed amended pleading do not warrant the creation of such an invasive and overburdensome duty.

The question of whether this proposed new duty should be imposed on Joe Smith, Jane Smith, and other New Jersey parents cannot be considered in a

---

[4] The Office of the Surgeon General ("OSG") in the U.S. Department of Health and Human Services has reported that "[u]p to 95% of young people aged 13-17 report using a social media platform. Nearly two thirds of teenagers report using social media every day and one third report using social media 'almost constantly.'" https://www.hhs.gov/surgeongeneral/priorities/youth-mental-health/social-media/index.html (content last reviewed by the OSG on June 17, 2024).

vacuum.   The societal concern about minors using technology to harm other minors  is a valid one.  But the concept of imposing an unreasonable, impractical, and impossible duty on parents for the purpose of achieving the illusory goal of preventing children from being harmed by other children's use of technology is fundamentally unfair and contravenes the status quo in New Jersey, where the State is systematically promoting child autonomy and deemphasizing the fundamental right of parents to raise their children.

For example, Policy 5756 of the New Jersey Department of Education ("NJDOE"), which provides transgender student guidance for localities, recommends that school districts take a "student-centered approach" to a "student's asserted gender identity" and that "parental consent is not required." *See*  N.J. DEPARTMENT OF EDUCATION, TRANSGENDER STUDENT GUIDANCE FOR SCHOOL DISTRICTS 2.[5]  NJDOE further advises that there should be "no affirmative duty for any school district personnel to notify a student's parent or guardian of the student's gender identity or expression."  *Id*. at 3.  When local school districts chose not to follow this guidance and imposed a duty to notify parents in their policies, these local school districts were met with legal action by the New Jersey Attorney General as well as opposition from other stakeholders, including the ACLU-NJ.  *See*, *e.g*., N.J. DEPARTMENT OF LAW & PUBLIC SAFETY, OFFICE OF THE

---

[5] A copy of Policy 5756 is made available on the NJDOE website: https://www.nj.gov/education/safety/sandp/climate/docs/Guidance.pdf.

ATTORNEY GENERAL, AG PLATKIN, DCR ANNOUNCE FILING OF CIVIL RIGHTS
COMPLAINTS AND APPLICATIONS SEEKING TO IMMEDIATELY PROHIBIT
IMPLEMENTATION OF LGBTQ+ PARENTAL NOTIFICATION POLICIES (June 22, 2023),
https://www.njoag.gov/ag-platkin-dcr-announce-filing-of-civil-rights-complaints-
and-applications-seeking-to-immediately-prohibit-implementation-of-lgbtq-
parental-notification-policies/    (providing copies of filings under docket numbers
MON-C-79-23, MON-C-78-23, and MON-C-80-23); *see also Platkin v.
Manalapan-Englishtown Reg'l Bd. of Educ., Platkin v. Middletown Bd. of Educ., &
Platkin v. Marlboro Township Bd. of Educ.*, ACLU-NJ (Mar. 5, 2024),
https://www.aclu-nj.org/en/cases/platkin-v-manalapan-englishtown-regl-bd-educ-
platkin-v-middletown-township-bd-educ-platkin-v (providing copies of amicus
briefs filed under docket numbers A-00046-23, A-000118-23, and A-0037-23).

In addition, the Freedom to Read Act (S2421/A3446), which was drafted to
limit so-called book banning in public schools, prevent school library media
specialists or any other teaching staff members from being sued over making
certain materials available to students, and providing such teaching staff with a
private right of action for emotional distress, defamation, libel, slander, damage to
reputation, or any other relevant tort, against any person (such as a concerned
parent) who harasses them for complying with certain provisions of the bill, was

recently passed by the New Jersey Legislature and is headed to the Governor's desk for his signature.[6]

The creation of this bill arose out of contentious arguments (and legal battles) between parents, township boards of education, and school faculty (including librarians) that were spurred by parents' concerns over sexually explicit materials that their children were being exposed to at school. *See, e.g.,* Vianella Burns, *Morris Librarian Defamed Over LGBTQ Books, Lawsuit Says*, THE PATCH (Apr. 26, 2023), https://patch.com/new-jersey/morristown/morris-librarian-defamed-over-lgbtq-books-lawsuit-says; *see also* Adam Clark, *Porn and loathing in N.J.? Sex, books and the culture wars. How parents got sued by a 'nice' school librarian*, N.J.COM (May 8, 2023), https://www.nj.com/education/2023/05/porn-and-loathing-in-nj.html.  For example, in the article entitled *Porn and Loathing in N.J.?*, journalist Adam Clark reported that in March of 2023, in Roxbury Township, mothers attended an open township board of education meeting and expressed concerns about sexually explicit books that were accessible to their children in the Roxbury High School Library. *Id*.

One concerned mother shared during the meeting that "Roxbury High School's library has books with illustrations featuring full frontal nudity, a woman sucking a strapon and 'every sex act you can imagine. . . .'"  *Id*.  Another

---

[6] A copy of the passed bill is available on the New Jersey Legislature website: https://www.njleg.state.nj.us/bill-search/2024/S2421.

concerned mother who attended the meeting "quoted from a passage from a high school library book – <u>Me and Earl and the Dying Girl</u> – in which characters discuss oral sex using the words 'eat her p---y.'" *Id.*

The article further reported that "[t]he first formal challenge in Roxbury involved a book [entitled <u>Let's Talk About It</u>, which] shows illustrations of naked bodies, includes masturbation tips and offers guidance on butt play and using lube." *Id.* According to booksellers, this "Teen's Guide to Sex, Relationships, and Being a Human," is geared toward 14-to-17-year-olds. . . ." *Id.*

When asked for a comment about the ongoing "book ban" controversy, including the age appropriateness of the book, <u>Let's Talk About It</u>, an associate professor of library and information science at Rutgers University stated, "It's fair to debate the quality of any sex education book. . . [b]ut it's a fallacy to think that high school students aren't sexually active. . . ." *Id.*

The article goes on to report that according to a recent survey by the U.S. Centers for Disease Control and Prevention, "[a]bout 30% of high school students have had sex" and "prior surveys have shown a majority of boys and girls will masturbate by the time they are 17." *Id.* Further, "another recent survey found 54% of teens have seen online pornography by the time they were 13." According to the associate professor at Rutgers University, these statistics indicate that "[t]he horse is out of the barn. . . ." *Id.*

19

Taking these examples of the status quo into consideration reinforces the reality that imposing a new duty on parents to monitor their adolescent children's use of technology 24/7 or prevent them from using it altogether contravenes the public policy of New Jersey.  What is more, these examples show that it would be fundamentally unfair to impose this new duty on parents in a state that advocates for more child autonomy on the issues of sex and gender, including promoting access to sexually explicit materials; encourages school staff to conceal information from parents about their children's presenting gender identity at school; and seeks to protect third parties from liability and provide those third parties with a private right of action if parents express concerns about information and materials their children are being exposed to at school.

In sum, "'[t]he determination of the foreseeability of harm and considerations of fairness and policy are connected,' with some overlap among the considerations relevant to each.'"  *Coleman*, 247 N.J. at 338 (quoting *Carvalh v. Toll Bros. and Developers*, 143 N.J. 565, 573 (1996)). It follows that "all considerations must be balanced 'in a "principled" fashion, leading to a decision that both resolves the current case and allows the public to anticipate when liability will attach to certain conduct.'"  *Id.* at 338 (quoting *G.A.-H. V. K.G.G.*, 238 N.J. 401, 414 (2019)); *accord Estate of Desir v. Vertus*, 214 N.J. 303, 323 (2013)

20

("[T]he function of the common law is not to achieve a result in a particular case, but to establish generally applicable rules to govern societal behaviors").

Here, the proposed Second Amended Complaint does not sufficiently allege foreseeability. What is more, considerations of fairness and policy strongly suggest against the creation of a new duty that would require parents to surveil their adolescent children's use of technology 24/7 or prevent them from using it altogether. At base, the subjects of technology, sex, and gender and the intersection of the three are filled with hot button issues that carry significant weight. The generalized and conclusory allegations in the proposed Second Amended Complaint do not warrant the creation of a new duty that would place an onerous and impossible burden on parents of adolescent children and add further fuel to the proverbial fire in this ongoing, amorphous, and contentious sociopolitical debate.

### B. Plaintiff fails to allege facts sufficient to plead a theory of general negligence liability against John Smith's parents

In New Jersey, there exists a general duty that a parent must

> "exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
>> (a) knows or has reason to know that he has the ability to control his child, and

> (b) knows or should know of the necessity and opportunity for exercising such control."

*Mazzili v. Selger*, 13 N.J. 296, 302 (1953) (quoting Restatement of the Law, Torts (Negligence) (1934), sec. 316)).

For similar reasons to those outlined in Part (A) above, Plaintiff does not sufficiently plead facts to establish that John Smith's parents breached this general duty of care.  Nowhere in the proposed Second Amended Complaint is it sufficiently alleged that John Smith's parents knew or should have known of the necessity and opportunity for exercising control over their son that would prevent him from engaging in such alleged conduct.  *Compare Moore v. Solanco School District*, 471 F.Supp.3d 640, 672 (E.D. Pa. 2020) (holding that the plaintiff failed to state a negligence claim against the parents of a fellow high school student parents who made racially derogatory Instagram posts, because the amended complaint contained no allegations that the parents knew about the harassing conduct of their son, either before or when it occurred.  Further, although the court could reasonably infer that the parents were on notice when their son was charged with a hate crime, there were no allegations in the amended complaint that their son made any additional racial comments or committed any further harassing conduct after he was criminally charged).

At base, "without additional facts showing (or allowing the reasonable inference of) knowledge or the responsibility to know," bald statements about what

a defendant knew or should have known are insufficient to satisfy the Rule 12(b)(6) pleading standard. *See, e.g., Mullin v. Balicki*, 875 F.3d 140, 149 n.11 (3d Cir. 2017). It follows that any general theory of negligence liability Plaintiff attempts to set forth in Count XVI of the proposed Second Amended Complaint would not survive a motion to dismiss and is, therefore, futile.

### C. The doctrine of parental immunity bars Plaintiff from bringing a negligent supervision claim against John Smith's parents

Count XVI of the proposed Second Amended Complaint contains the bald statement that "Defendants, Joe Smith and Jane Smith, owed Plaintiff a duty of care to supervise John Smith." 2d Amended Compl., ¶ 232. In addition, the proposed Second Amended Complaint alleges in generalized, conclusory, and run-on fashion that "Defendants, Jane Smith and Joe Smith, knew or had reason to know the highly dangerous character of their acts and omissions their acts and omissions alleged herein and that those acts and omissions were highly likely to cause harm to Plaintiff, such that Joe and Jane Smith were conscious that injury would likely or probably result therefrom, and with reckless indifference to the consequences consciously and intentionally engaged in the acts and omissions that caused Plaintiff to suffer harm." *Id.*, ¶ 236.

These allegations, which appear to sound in negligent supervision, do not meet the 12(b)(6) standard to state a claim upon which relief can be granted, for reasons including that Plaintiff fails to plead facts that satisfy the "willful or

wanton" exception to the parental immunity doctrine.  *See generally Foldi v. Jeffries*, 93 N.J. 533 (1983) (establishing the so-called *Foldi* analysis to address when the parental immunity doctrine bars recovery under a negligent supervision theory); *see also Buono v. Scalia*, 179 N.J. 131 (2004) (applying the *Foldi* analysis to the facts of a negligent supervision case involving a third-party claim that was not a claim from a joint tortfeasor).

The first step in this analysis under New Jersey law requires the Court "to determine what acts or omissions by the parent a fact finder could reasonably find were the proximate cause of the child's injury."  *Buono*, 179 N.J. at 139. Next, the Court must "determine whether that conduct is protected by parental immunity, *i.e.*, whether it involves the exercise of parental authority or the provision of customary child care.  If it does, the next step is to determine whether the conduct constitutes a lack of parental supervision."  *Id.*  If the answer is "yes", "the final step is to determine whether a fact finder could reasonably find that the conduct was willful or wanton thereby removing it from the immunity."  *Id.*

Here, Plaintiff sets forth no allegations in the proposed Second Amended Complaint that would allow this Court to analyze which acts or omissions by John Smith's parents a fact finder could reasonably find were the proximate cause of Plaintiff's alleged injuries.  Further, even if the proposed amended pleading did sufficiently allege proximate cause (it does not), the implied allegation that, like

24

Plaintiff's parents, along with most parents of "young people" in New Jersey, Joe Smith and Jane Smith allowed their adolescent child to possess a smartphone and have social media accounts is conduct that would be protected by the doctrine of parental immunity.  *See, e.g.*, 2d Amended Compl., ¶¶ 15-16, 33; *see Buono*, 179 N.J. at 137 (quoting *Foldi*, 93 N.J. at 545-46) (explaining in a "lengthy but critical passage" how there are "'certain areas of activities within the family sphere involving parental discipline care, care, and control that should and must remain free from judicial intrusion'", and how "[t]here is no recognized correct theory on how much freedom a parent should allow his or her children'").  What is more, for reasons including those set forth in Parts (A) and (B) above, Plaintiff fails to sufficiently plead that any of the generalized and conclusory allegations directed against John Smith's parents in the proposed Second Amended Complaint constitute a lack of parental supervision.

The term "willful or wanton" in this context means "recklessness."  *Buono*, 179 N.J at 138.  The *Buono* Court expounded that "recklessness" means "conduct that 'involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing. . . . It is the doing of something which in fact involves a grave risk to others, whether the doer [realizes] it or not."  *Id*.  Further, the test is "objective and not subjective."  *Id*.

Here, Plaintiff does not (and cannot) set forth facts alleging that John Smith's parents acted recklessly by allowing their adolescent child to possess a smartphone and have social media accounts. What is more, even if properly pled, an allegation of recklessness would be irreconcilable with the fact that Plaintiff's own parents allowed her to possess a smartphone and also have her own social media accounts. Further, the proposed amended pleading sets forth no allegations that would give rise to a reasonable inference that parents allowing their adolescent children to possess smartphones and have social media accounts involves a grave risk to others. Accordingly, the negligent supervision claim that appears to be set forth by Plaintiff in Count XVI of the proposed Second Amended Complaint is futile, as it would fail to state a claim upon which relief can be granted under Rule 12(b)(6).

### III. Plaintiff fails to allege facts sufficient to support her claim of spoliation/fraudulent concealment

Under New Jersey law, the tort of fraudulent concealment in a litigation setting requires a plaintiff to prove the following elements:

(1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;

(2) That the evidence was material to the litigation;

(3) That plaintiff could not reasonably have obtained access to the evidence from another source;

(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; [and]

(5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Rosenblit v. Zimmerman*, 166 N.J 391, 407 (2001). If the alleged concealment or destruction of evidence is uncovered while the underlying litigation is pending, "the injured party may amend his or her complaint to add a count for fraudulent concealment." *Id.*

In the present matter, Plaintiff's attempt to add a fraudulent concealment claim in the litigation context against John Smith's parents is misplaced, *See* 2d Amended Compl., ¶¶ 240-248, as the first element of this tort cannot be met. Plaintiff alleges, in conclusory fashion, that "Joe Smith and Jane Smith had a legal obligation to disclose evidence and information described in Paragraphs 52-55" of the Proposed Second Amended Complaint. *Id.*, ¶ 241. This statement proffered by Plaintiff is incorrect as a matter of law and is simply not true.

It is undisputed that John Smith's parents, Joe Smith and Jane Smith, are not a party to the present litigation. What is more, assuming, for argument's sake, that John Smith's parents ever had custody or control over the purported "evidence" that Plaintiff is presently seeking to prove her case, Plaintiff never sent John Smith's parents a litigation hold letter prior to the initiation of this lawsuit, and at the time of this filing, Plaintiff has yet to serve John Smith's parents with a third

party subpoena.  For similar reasons, an inference of spoliation under federal law is inapplicable to John Smith's parents, who are not parties to the present litigation that has been pending since the original complaint was filed by Plaintiff on February 2, 2024.  *See, e.g., Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F.Supp. 2d 322, 336 (D.N.J. 2004) ("The spoliation inference is an adverse inference that permits a jury to infer that 'destroyed evidence might or would have been unfavorable to the position of the offending party.'"  The rationale for its implementation is "the common sense observation that when ***a party*** destroys evidence that is relevant to a claim or defense in a case, ***the party*** did so out of  the well-founded fear that the contents ***would harm him"***) (emphasis added).

Lastly, the allegations set forth in Count XVII of the proposed Second Amended Complaint against John Smith's parents are factually irreconcilable with the allegations set forth in the balance of the proposed amended pleading concerning John Smith's and Joe Jones's alleged civil liability to Plaintiff for allegedly possessing child pornography in violation of 18 U.S.C. § 2252A and §1466A.  *See, e.g.*, 2d Amended Compl., Count II, ¶¶ 76-88.  Under these federal statutes, a person may be held criminally and civilly liable for knowingly possessing child pornography.  *See, e.g.*, 18 U.S.C. § 2252A(a)(5); *see also* 18 U.S.C. 1466A(b).  Section (d) of 18 U.S.C. 2252A  provides an affirmative

defense to a criminal defendant charged with violating subsection (a)(5) of 18 U.S.C. if that person

> (1) possessed less than three images of child pornography; and
>
> (2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any images or copy thereof—
>
>> (A) took reasonable steps to destroy each such image; or
>>
>> (B) reported the matter to a law enforcement agency and afforded that agency access to each such image.

18 U.S.C. 2252A(d); *see also* 18 U.S.C. 1466A(e) (providing a similar affirmative defense to a criminal defendant charged with violating subsection (b) of that statute). Here, Plaintiff alleges that the purported AI Generated Nude Photos allegedly created, possessed, and shared by John Smith constitutes child pornography within the meaning of 18 U.S.C. § 2252A and § 1466A. *See, e.g.,* 2d Amended Compl. Count II, ¶¶ 76-88. Based on Plaintiff's own allegations, allowing the spoliation/fraudulent concealment claim against John Smith's parents to proceed would, for all intents and purposes, entertain the idea that John Smith's parents are currently breaking the law by knowingly possessing contraband in the form of child pornography, and that John Smith's parents should further break the law by providing Plaintiff and her parents, who are not members of law

enforcement, with access to these images that Plaintiff insists exist.  This legal argument is nonsensical and should not survive a 12(b)(6) motion to dismiss.

At base, Plaintiff's overzealous effort to add Joe Smith and Jane Smith as parties to this litigation by attempting to distort the tort of fraudulent concealment in a litigation setting under New Jersey law; expand the application of the spoliation inference under federal law; and coerce a confession out of John Smith's parents that would subject them to criminal liability for knowingly possessing and sharing child pornography in violation of 18 U.S.C. § 2252A and/or § 1466A, all so that Plaintiff can avoid taking the necessary steps to sufficiently plead her claims or meet the necessary burden of proof at the summary judgment stage or at trial should not be entertained by this Court.  Accordingly, Count XVII of the proposed Second Amended Complaint should not be added to Plaintiff's operative pleading.

## IV. The proposed conspiracy count alleged against John Smith is futile because it does not allege facts that plausibly suggest a meeting of the minds

Plaintiff seeks to add a conspiracy count against John Smith by alleging that "John Smith and John Jones entered into an agreement with a common design pursuant to which they agreed to obtain and upload clothed images of Jane Doe. . . from [her] social media account[] to ClothesOff to generate and obtain the [AI Generated] Nude Photos and share. . . those. . . Photos [with] others, including

minor classmates." 2d Amended Compl., Count XV, ¶ 226.  In addition, Plaintiff alleges that "John Smith's and Jo[h]n Jones'[s] agreement was for an unlawful and improper purpose, as more specifically described in Counts I-XIV", *Id*., ¶ 227, which includes counts for violation of federal law under 15 U.S.C. § 6851 and 18 U.S.C. § 2252A.  *See* 2d Amended Compl, Counts I, II, IX, and X.  These generalized and conclusory allegations are insufficient under the Rule 12(b)(6) standard to state a claim upon which relief can be granted for conspiracy. *Compare Moore*, 471 F. Supp.3d at 670 (dismissing the conspiracy count against individual defendants because the pleading contained "no factual allegations to support [the] conclusory allegation" that those defendants "conspired to violate the plaintiff's civil rights pursuant to 42 U.S.C. § 1985 by agreeing to attempt to repress [the plaintiff's] complaints about [a fellow high school student's] Instagram postings so that [the fellow high school student] could remain on the football team").

"To plead a conspiracy claim properly, a plaintiff must allege 'facts that plausibly suggest a meeting of the minds.'" *Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010)).  Put differently, the proposed amended pleading cannot "plead merely a 'conclusory allegation of agreement at some unidentified point.'"  *Id*.  at 160 (quoting *Twombly*, 550 U.S. at 557)).

Because the proposed Second Amended Complaint fails to make allegations of conspiracy with the requisite specificity, Count XVI is futile and should not be added to Plaintiff's operative complaint.

## **CONCLUSION**

For the foregoing reasons, John Smith and his parents, Joe Smith and Jane Smith, respectfully request that the Court deny Plaintiff's motion for leave to amend to add Joe Smith and John Smith as defendants and proposed Count XV against John Smith and proposed Counts XVI,  XVII, XVIII against John Smith's parents  to Plaintiff's operative complaint.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

BY:   s/ Christopher D. Adams
            Christopher D. Adams

*Attorneys for Defendant*
*John Smith*

DATED:  December 2, 2024

## CERTIFICATION OF SERVICE

I hereby certify that on December 2, 2024, I electronically filed a copy of this opposition to Plaintiff's motion to amend with the Clerk of the Court using the CM/ECF system and also caused to be served copies of this document upon counsel of record for Plaintiff via electronic mail at the following addresses:

Shane B. Vogt
David A. Hayes
**TURKEL CUVA BARRIOS, P.A.**
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
svogt@tcb-law.com
dhayes@tcb-law.com
*Attorneys for Plaintiff (Pro Hac Vice)*

Jon-Henry Barr
John Gulyas
**BARR & GULYAS, L.L.C.**
21 Brant Avenue
Clark, New Jersey 07066
jhbarr@barrgulyas.com
jgulyas@barrgulyas.com
*Co-Counsel / Local Counsel for Plaintiff*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 2, 2024.

By:   s/ Christopher D. Adams
Christopher D. Adams