# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE, a minor, through her parents and legal guardians, JANE ROE and JOHN ROE<br><br>        Plaintiff,<br><br>      v.<br><br>JOHN SMITH, a minor, through his parent(s) and legal guardian(s), JOE SMITH and JANE SMITH,<br>        Defendant. | Assigned to: Hon. Esther Salas<br>Referred to: Hon. James B. Clark, III<br><br>Civil Action No. 2:24-cv-00634-ES-JBC<br><br>CIVIL ACTION |

---

**THIRD-PARTY INTERVENOR K.W.'S BRIEF IN SUPPORT OF MOTION TO INTERVENE AND TO QUASH SUBPOENAS SERVED UPON WESTFIELD HIGH SCHOOL, WESTFIELD PUBLIC SCHOOLS, AND THE WESTFIELD POLICE DEPARTMENT PURSUANT TO FED. R. CIV. P. 45.**

---

Kevin G. Walsh, Esq.
Daniel F. Carola, Esq.
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900
KevinG.Walsh@gtlaw.com
Daniel.Carola@gtlaw.com

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL HISTORY & STATEMENT OF FACTS ...........................................................1

ARGUMENT ..................................................................................................................................4

    I.    K.W. SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULE 24 ......4

        A.  K.W. is Entitled to Intervene as of Right Pursuant to Fed. R. Civ. P. 24(a)(2) ........4

        B.  K.W. Also Meets the Standard for Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b)(1)(B)..................................................................................................7

    II.    THE SUBPOENAS SHOULD BE QUASHED ............................................................8

        A.  The Student Records Sought by the WPS and WHS Subpoenas Are Protected ......8

        B.  Juvenile Records – To the Extent They may Exist – Sought by the WPD Subpoena Are Protected .......................................................................................................11

CONCLUSION .............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Case(s)**                                                 **Page(s)**

*Brody By & Through Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992) ...................................................................................6

*Burgess v. Galloway*,
    No. 20-cv-06744, 2021 WL 2661290 (D.N.J. Jan. 28, 2021) ..............................8

*Cellco P'ship v. Cnty. of Monmouth, New Jersey*,
    23-18091 (ESK/EAP), 2024 WL 4579506 (D.N.J. Oct. 25, 2024) ......................4

*Columbus Life Ins. Co. v. Wilmington Tr., N.A.*,
    344 F.R.D. 207 (D.N.J. 2023) ...............................................................................8

*County of Cape May v. United States*,
    CV 23-21201 KMW-SAK, 2024 WL 2818202 (D.N.J. June 3, 2024) ...............6

*Doe v. Princeton Univ.*,
    CV 20-4352 (MAS) (RLS), 2024 WL 1375948 (D.N.J. Apr. 1, 2024)............8, 9

*Empire Landscape, LLC v. Stivaly*,
    24CV496 (EP) (JRA), 2024 WL 3403251 (D.N.J. Apr. 24, 2024) ......................4

*Haigh v. Chojnacki*,
    CV160854PGSDEA, 2016 WL 11893314 (D.N.J. Aug. 24, 2016) ............11, 12

*Haque v. Swarthmore Coll.*,
    No. 15-1355, 2017 WL 3218073 (E.D. Pa. July 27, 2017) ...................................9

*Harris v. Pernsley*,
    820 F.2d 592 (3d Cir. 1987) ...................................................................................5

*Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*,
    CV202382AETZNQ, 2020 WL 4448988 (D.N.J. Aug. 3, 2020) ........................9

*Hoots v. Pennsylvania*,
    672 F.2d 1133 (3d Cir. 1982) ...............................................................................7

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) .................................................................................4

*In re Lazaridis*,
    865 F. Supp. 2d 521 (D.N.J. 2011).......................................................................8

*L.R. v. Camden City Pub. Sch. Dist.*,
    238 N.J. 547 (2019) .........................................................................................9, 11

*Mason v. Roman Catholic Archdiocese of Trenton*,
  No. 18-10733, 2019 WL 5906837 (D.N.J. Nov. 8, 2019)...................................................9

*Michaels Stores, Inc. v. Castle Ridge Plaza Associates*,
  6 F. Supp. 2d 360 (D.N.J. 1998) .......................................................................................5

*Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ............................................................................................4, 6

*NJDEP v. E.I Dupont*,
  CV 19-14766 (RMB/JBC), 2024 WL 4834906 (D.N.J. Nov. 20, 2024).............................7

*N.L.R.B. v. Frazier*,
  144 F.R.D. 650 (D.N.J. 1992) ...........................................................................................4

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
  422 F.3d 141 (3d Cir. 2005) ............................................................................................10

*Stamy v. Packer*,
  138 F.R.D. 412 (D.N.J. 1990) ...........................................................................................8

*Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*,
  CV 22-4905 (RK)(JBD), 2024 WL 378691 (D.N.J. Feb. 1, 2024)....................................6

*United States v. Pretlow*,
  770 F. Supp. 239 (D.N.J. 1991) ......................................................................................12

*United States v. Territory of Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014) ..............................................................................................6

*United States v. W.R. Grace & Co.-Conn.*,
  185 F.R.D. 184 (D.N.J. 1999) .......................................................................................5, 6

*Worthington v. Bayer Healthcare LLC*,
  CIV.A. 11-2793 ES, 2011 WL 6303999 (D.N.J. Dec. 15, 2011) .......................................7

**Other Authorities**
Fed. R. Civ. P. 24(a)(2) ............................................................................................................4

Fed. R. Civ. P. 24(b)(1)(B) ......................................................................................................7

Fed. R. Civ. P. 24(b)(3) ...........................................................................................................7

Fed. R. Civ. P. 45(d) ..............................................................................................................11

Fed. R. Civ. P. 45(d)(3)(A)(iii)................................................................................................8

L. Civ. R. 5.3(c)(5) ............................................................................................................................5

N.J.A.C. § 6A:32-7.5(e)(14), (15) ....................................................................................................9

N.J.S.A. § 2A:4A-60(1)(a)(10) ......................................................................................................11

N.J.S.A. § 18A:37-13.1 to -32 .........................................................................................................9

20 U.S.C. § 1232g .......................................................................................................................8, 9

20 U.S.C. §§ 1681-1688 ..................................................................................................................9

## PRELIMINARY STATEMENT

This motion to intervene and quash is brought on behalf of a non-party student K.W., who is not named as a party to the pending litigation. Because of their non-party status, numerous federal and state courts have recognized that third parties such as this student have far greater protections afforded to them than the lesser protections that exist for first-party or third-party litigants. Moreover, in this case, both the defendant John Smith and K.W. (as well as other non-party students who might move to quash in this matter) are entitled to privacy protections because, ultimately, they are minors. The simple reality is that, in light of the District Court's February 2024 opinion finding that (as a preliminary matter) the images in dispute in this case (if they ever existed in the past and if there are any digital copies currently in existence) qualify as child pornography under federal law, none of the students is going to answer questions from plaintiff's counsel due to the risk of future criminal prosecution. Permitting plaintiff's counsel to rummage through the confidential disciplinary records of minor students at Westfield High School is going to make the alleged underlying incident from August and October 2023 even more of a media circus in 2025 than it has already been thus far. This Court should quash the subpoenas.

## PROCEDURAL HISTORY & STATEMENT OF FACTS

K.W. adopts and incorporates Defendant's Statement of Facts as presented in Defendant's Moving Brief. [Doc. 69]. Plaintiff served a subpoena on K.W. on February 29, 2024, alleging that s/he was a participant in Snapchat groups that relate to Plaintiff's allegations contained in her Complaint. Walsh Cert., ¶5; Ex. A. K.W. appeared for deposition on March 13, 2024. Walsh Cert., ¶6. During that deposition, K.W. invoked the Fifth Amendment right against self-incrimination and did not answer any substantive questions. Walsh Cert., ¶6. K.W. also did not produce any documents in response to the subpoena. Walsh Cert., ¶7.

1

On August 22, 2024, Plaintiff served separate subpoenas (the "Subpoenas") on:

(a) WPS Superintendent Dr. Raymond Gonzalez, Walsh Cert., Ex. B;

(b) WHS Principal Mary Asfendis, Walsh Cert., Ex. C; and

(c) WPD Police Chief Christopher Battiloro, Walsh Cert., Ex. D.

These Subpoenas seek information related to investigations each conducted into Plaintiff's allegations against Defendant.

Specifically, the WPS Subpoena seeks the following categories of documents:

1. All documents, materials, and records created or obtained in connection with HIB Case No. 253833_WHS_10252023.

2. All notes, recorded interviews, written or recorded statements, and similar documents, materials, and records related to HIB Case No 253833_WHS_10252023.

3. All images, photos, pictures, electronically stored information, and similar materials obtained in connection with HIB Case No 253833_WHS_10252023.

4. All correspondence, emails, memos, and similar written communications related to related to [sic] HIB Case No 253833_WHS_10252023.

5. All documents, materials, and records identifying any Westfield High School student(s) who obtained, disclosed, shared, and/or disseminated any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

6. Westfield Public Schools's entire file, excluding attorney-client communications or attorney work product, related to HIB Case No 253833_WHS_10252023.

Walsh Cert., Ex. A [Doc. 69-3].

The subpoena directed to WHS seeks similar information:

1. All documents, materials, and records created or obtained in connection with or related to any investigation conducted by Westfield High School on or about October 20, 2023, involving pornographic or nude images of Westfield High School Students created using artificial intelligence . . .

2

2. All notes, recorded interview, written or recorded statements, and similar documents, materials, and records related to any investigation conducted by Westfield High School on or about October 20, 2023, involving pornographic or nude images of Westfield High School Students created using artificial intelligence . . .

3. All images, photos, pictures, electronically stored information, and similar materials obtained during, in connection with, and/or as a result of any investigation conducted by Westfield High School on or about October 20, 2023 involving pornographic or nude images of Westfield High School Students created using artificial intelligence . . .

4. All correspondence, emails, memos, and similar written communications related to any investigation conducted by Westfield High School on or about October 20, 2023, involving pornographic or nude images of Westfield High School Students created using artificial intelligence . . .

5. All documents, materials, and records identifying any Westfield High School student(s) who obtained, disclosed, shared, and/or disseminated any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

Walsh Cert., Ex. B [Doc. 69-3].

The WPD Subpoena seeks:

1. Westfield Police Department's entire file related to Case # 23-47062.

2. All documents and records associated with any investigation conducted by the Westfield Police Department related to the possession, disclosure, sharing, and/or dissemination of any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

3. All notes, recorded interviews, written or recorded statements, and similar documents, materials, and records related to any investigation conducted by the Westfield Police Department related to the possession, disclosure, sharing, and/or dissemination of any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

4. All images, photos, pictures, electronically stored information, and similar materials obtained during or as a result of any investigation conducted by the Westfield Police Department related to the possession, disclosure, sharing, and/or dissemination of any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

5. All correspondence, emails, memos and similar written communications related to any investigation conducted by the Westfield Police Department related

to the possession, disclosure, sharing, and/or dissemination of any pornographic or nude images of Westfield High School Students that were created using artificial intelligence, on or around October 20, 2023.

Walsh Cert., Ex. C [Doc. 69-3].

## ARGUMENT

I.  **K.W. SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULE 24**

    A.  **K.W. is Entitled to Intervene as of Right Pursuant to Fed. R. Civ. P. 24(a)(2).**

Federal Rule of Civil Procedure 24(a)(2) permits a party to intervene as of right when s/he "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Third Circuit has distilled the Rule to require the following elements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Empire Landscape, LLC v. Stivaly*, 24CV496 (EP) (JRA), 2024 WL 3403251, at *1 (D.N.J. Apr. 24, 2024) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)). Rule 24 rule is "liberally construed in favor of intervention." *N.L.R.B. v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992).

K.W. easily meets all four factors for as-of-right intervention. First, K.W.'s motion to intervene is timely. Courts analyze the timeliness of a motion to intervene by assessing: "the stage of the proceeding," "the prejudice that delay may cause the parties," and "the reason for the delay." *Cellco P'ship v. Cnty. of Monmouth, New Jersey*, 23-18091 (ESK/EAP), 2024 WL 4579506, at *6 (D.N.J. Oct. 25, 2024) (quoting *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)). Based upon this framework, K.W. readily meets the timeliness standard. The motion was filed before the return date of Defendant's motion to quash, as required

by the Court in the unique circumstances of this particular case. [Doc. 67]. This also comports with this District's Local Rules related to similar intervention timeliness concerns. *See* L. Civ. R. 5.3(c)(5) (requiring intervention regarding protective orders "before the return date of any motion to seal or otherwise restrict public access"). Further, K.W. only moves to intervene for the limited purpose of quashing the Subpoenas. Plaintiff will suffer no prejudice as a result, particularly because the limited purpose of the intervention does not relate to the merits of the underlying action. Plaintiff will also suffer no prejudice because the subpoena compliance date has not yet passed. Lastly as it relates to timeliness, because K.W. seeks to intervene for such a limited purpose, K.W.'s application to intervene could not have been earnestly brought any time before Defendant filed his own motion to quash.

Second, K.W. has a direct interest in preventing the release of records that relate to their involvement, if any, in the investigations conducted by the Westfield Entities. Those records contain documents regarding the investigation into the alleged incident and potentially relating to K.W.'s conduct, cooperation, silence, or assertion of constitutional rights. Walsh Cert., ¶3. Further, Plaintiff has previously confirmed K.W.'s sufficient interest in this action by previously serving a subpoena and attempting to depose them. Accordingly, K.W. has "demonstrate[d] that there is a tangible threat to a legally cognizable interest." *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184, 189 (D.N.J. 1999) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)).

Third, this action may affect K.W.'s legally protectible interests. In considering the third element, "[a]ll that is necessary . . . is a showing by the applicant that their interest 'might become affected or impaired, as a practical matter, by the disposition of the action in [its] absence.'" *Michaels Stores, Inc. v. Castle Ridge Plaza Associates*, 6 F. Supp. 2d 360, 365 (D.N.J. 1998)

5

(quoting *Mountain Top Condominium Ass'n*, 72 F.3d at 368). Courts have consistently held that a party meets this standard "where violations of the intervenor's statutory or constitutional rights are asserted." *W.R. Grace*, 185 F.R.D. at 189. Because compliance with the subpoenas threatens K.W.'s privilege against self-incrimination that s/he asserted at the deposition, s/he "possesses a sufficient legal interest in the underlying dispute." *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, CV 22-4905 (RK)(JBD), 2024 WL 378691, at *5 (D.N.J. Feb. 1, 2024) (quoting *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992)).

Fourth and perhaps most importantly, K.W. is inadequately represented in this litigation. To meet this fourth element of Rule 24(a)(2), a movant may show either "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *County of Cape May v. United States*, CV 23-21201 KMW-SAK, 2024 WL 2818202, at *4 (D.N.J. June 3, 2024) (quoting *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519–20 (3d Cir. 2014)). Here, while Defendant and K.W. are aligned in both moving to quash the Subpoenas, K.W.'s interests as a non-party will diverge from the Defendant's. Though K.W. is not named in the Complaint, compelled testimony from either party could produce incriminating information against the other. Logically, K.W. would have been named as a defendant if s/he had engaged in the same conduct as plaintiff seems to believe John Smith did, and because K.W.'s conduct is different, John Smith cannot adequately represent K.W. nor protect K.W.'s legal interests. The Defendant likely has no interest in protecting K.W.'s constitutional rights, nor does the Defendant share K.W.'s interest in remaining a non-party to this action.

6

Accordingly, because K.W. meets the standard under Fed. R. Civ. P. 24(a) for intervention as of right, the motion to intervene should be granted, and this motion to quash should be considered.

### B. K.W. Also Meets the Standard for Permissive Intervention Pursuant to Fed. R. Civ. P. 24(b)(1)(B).

While K.W.'s intervention should be granted as of right as shown above, alternatively, K.W. also meets the standard for permissive intervention under Fed. R. Civ. P. 24(b). Under Rule 24(b)(1)(B), a court may allow a non-party, upon the filing a "timely" motion, to intervene if that non-party "has a claim or defense that shares with the main action a common question of law or fact." Chief among a court's considerations for permissive intervention are (i) "undu[e] delay or prejudice [to] the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and (ii) whether the intervenor's interests in the litigation are adequately represented. *See NJDEP v. E.I Dupont*, CV 19-14766 (RMB/JBC), 2024 WL 4834906, at *6 (D.N.J. Nov. 20, 2024); *see also Worthington v. Bayer Healthcare LLC*, CIV.A. 11-2793 ES, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (noting that a court may also consider "whether the proposed intervenors will add anything to the litigation") (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)).

Based upon this framework, K.W. also meets the standard for permissive intervention under Rule 24(b)(1)(B). First, as with the as-of-right analysis in Point I.A and for the same reasons, K.W.'s motion to intervene is timely. Second, K.W. and Defendant certainly share an interest in quashing the Subpoenas, but for different reasons. Again, as explained in Point I.A above, K.W.'s legal interest is not adequately represented by John Smith, in part because, as a non-party not named in the Complaint, K.W.'s conduct must have been logically different than that of Defendants. No current party to this action has any interest in safeguarding K.W.'s constitutional rights. Third, K.W.'s intervention presents no prejudice or delay to the proceedings. Intervention

7

is sought for a limited purpose unrelated to the merits of any claims or defenses, and K.W. seeks to quash Subpoenas already subject to Defendant's motion to quash.

Accordingly, K.W. should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B).

## II. THE SUBPOENAS SHOULD BE QUASHED.

### A. The Student Records Sought by the WPS and WHS Subpoenas Are Protected.

Non-parties are "afforded greater protection from discovery than a party." *Burgess v. Galloway*, No. 20-cv-06744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) (citation omitted). As such, "[t]he standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) (quoting *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990)).

Courts may quash subpoenas that "require[] disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The moving party bears the burden of establishing that a subpoena should be quashed. *See In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011). The documents sought by the Subpoenas in the Jane Doe/John Smith litigation are protected from disclosure by both state and federal statutory and regulatory schemes. Accordingly and because no exception or waiver applies that would permit disclosure of these confidential school records, the Subpoenas must be quashed.

The Federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), protects disclosure of "education records," broadly defined as documents "contain[ing] information directly related to a student" and "maintained by an educational agency or institution." 20 U.S.C. § 1232g(a)(4)(A). FERPA thus protects "disciplinary records of non-party student[s]." *Doe v. Princeton Univ.*, CV 20-4352 (MAS) (RLS), 2024 WL 1375948, at *5 (D.N.J. Apr. 1, 2024) (quoting *Haque v. Swarthmore Coll.*, No. 15-1355, 2017 WL 3218073, at *6 (E.D. Pa. July 27,

8

2017)). FERPA, as well as New Jersey law, both allow for disclosure of student records "with parental consent or as a result of a court order," *Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-10733, 2019 WL 5906837, at *9 (D.N.J. Nov. 8, 2019) (citing 20 U.S.C. § 1232g(b) and N.J.A.C. § 6A:32-7.5(e)(14), (15)), though neither parental consent nor a court order exists here.

Moreover, "New Jersey's regulations are stricter" than FERPA's protections. *Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*, CV202382AETZNQ, 2020 WL 4448988, at *1 (D.N.J. Aug. 3, 2020). The New Jersey Supreme Court requires courts to analyze ten factors when considering whether to release a student's school records:

> (1) the type of student record requested; (2) the information that the student record contains; (3) the potential for harm in any subsequent nonconsensual disclosure of the student record; (4) the injury from disclosure to the relationship between the educational agency and the student and his or her parents or guardians; (5) the extent to which disclosure will impede the educational agency's functions by discouraging candid disclosure of information regarding students; (6) the effect disclosure may have upon persons who have provided such information; (7) the extent to which agency self-evaluation, program improvement, or other determinations will be chilled by disclosure; (8) the adequacy of safeguards to prevent unauthorized disclosure; (9) the degree of need for access to the student records; and (10) whether there is an express statutory or regulatory mandate, articulated public policy, or other recognized public interest militating toward access.

*L.R. v. Camden City Pub. Sch. Dist.*, 238 N.J. 547, 575 (2019) (Patterson, J., concurring).

Applying these factors demonstrates why this Court should grant K.W.'s motion to quash the Subpoenas. As it relates to factors one, two, and three, the WPS and WHS Subpoenas seek sensitive documents relating the School's HIB and Title IX investigations pursuant to N.J.S.A. § 18A:37-13.1 to -32, and 20 U.S.C. §§ 1681-1688, respectively. These are particularly sensitive documents, the production of which have the potential to eviscerate K.W.'s Fifth Amendment right against self-incrimination, which s/he properly invoked during the deposition in this matter on March 13, 2024. Walsh Cert., ¶ 6.

9

Through the Subpoenas, Plaintiff would essentially take any comments made by K.W. to school officials during the HIB and Title IX investigations and attribute them to K.W. in a more formal setting, that is, federal court. However, unlike civil deponents who are not parties to litigation, high school students are generally afforded a "reduced liberty interest . . . in the public school setting." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 148 (3d Cir. 2005). Plaintiff attempts to use the Subpoenas to transmogrify this process. In essence, Plaintiff is trying to re-package statements potentially made in a school investigatory setting (where there are few procedural guardrails for administrators trying to run a high school) and import these statements into a separate proceeding where K.W. would normally be afforded the full panoply of Constitution protections. This Court should not countenance such an obviously incongruous gambit.

Regarding factors four, five, and six, by issuing the Subpoenas, Plaintiff's attempted end-run around K.W.'s constitutional rights would damage the child's relationship with the Westfield School District at a particularly critical point in the educational experience, with college applications imminent. Further, by divulging this sensitive information, especially in a high school setting where word spreads quickly, WPS risks chilling future candid conversations from students that lie at the heart of the effectiveness of prospective HIB and Title IX investigations, as well as the statutory schemes that created them. No good will result from disclosing K.W.'s name but will serve, rather, to impede prospective investigations when future students remember back to when K.W. and others were hauled into civil litigation, and potentially forced to testify against their will and in contravention of their constitutional rights – in a matter where the plaintiff does not currently possess the allegedly offending images (if one or more ever existed) and where K.W. and others are not parties to the case.

Concerning factor nine, pulling the constitutional rug out from under a non-party in pursuit of Plaintiff's civil claim hardly strikes the appropriate balance. Moreover, factor ten weighs in favor of quashing the Subpoenas because both federal and state statutes demonstrate a clear public policy favoring the privacy of student records. *See L.R.*, 238 N.J. at 550. Accordingly, because the *L.R.* factors weigh against disclosure, the WPS and WHS Subpoenas should be quashed.

### B. Juvenile Records – To the Extent They May Exist – Sought by the WPD Subpoena Are Protected.

The documents sought by the WPD Subpoena are also protected from disclosure under Fed. R. Civ. P. 45(d). Under New Jersey statute, law enforcement records of juveniles may only be turned over to a "potential party in a subsequent civil action for damages" if that action *and* those records both "relate[] to an act of delinquency committed by a juvenile." N.J.S.A. § 2A:4A-60(1)(a)(10). Even then, any documents produced fitting that narrow definition must be heavily redacted. *Id.*

Here, WPD never demanded that K.W. speak with them concerning the incident alleged in the Plaintiff's complaint. Walsh Cert., Ex. ¶ 8. Indeed, the WPD's seeming lack of interest in K.W., coupled with the fact that there are no allegations relating to K.W. in Plaintiff's complaint or proposed amended complaint, explains why K.W. remains a non-party to this litigation. Nevertheless, to the extent the WPD possesses any records from their investigation that do reference K.W. – for example, if WPS shared their HIB or Title IX investigatory reports with the WPD – any documents are protected from disclosure. *See Haigh v. Chojnacki*, CV160854PGSDEA, 2016 WL 11893314, at *3 (D.N.J. Aug. 24, 2016) (declining to order release of juvenile records because, among other things, "principles of federalism and comity demand that this court refrain" from doing so) (citing *United States v. Pretlow*, 770 F. Supp. 239 (D.N.J. 1991)).

Furthermore, no records could relate to any juvenile delinquency, because no such accusations exist in this matter. It is unclear why K.W. has been mixed up in this litigation mess, but s/he certainly is not delinquent in any legal or common sense of the word. Second, to the extent any WPD records reference K.W., as previously explained, those records would impinge upon their Fifth Amendment right against self-incrimination. Use of these documents in this action would undermine K.W.'s Fifth Amendment protections. Accordingly, the WPD Subpoena should be quashed.

## CONCLUSION

For the reasons set forth herein, K.W. is entitled to intervene pursuant to Fed. R. Civ. P. 24. The Court should quash the Subpoenas that Plaintiff served on the Westfield Entities, as those Subpoenas seek information protected from disclosure under Fed. R. Civ. P. 45.

Dated: December 11, 2024

Kevin G. Walsh
Daniel F. Carola
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900
KevinG.Walsh@gtlaw.com
Daniel.Carola@gtlaw.com